Harper, J.
delivered the opinion of the Court.
We do not think it necessary to enter into any full investigation of the grounds on which the motion is made, in this case, as the determination of the Court will rest on a matter not stated in those grounds.— We concur, however, with the presiding Judge : that the fraud imputedvto the plaintiff’s judgment against Henderson, could not be the subject of investigation in this case; and that no presumption of the plaintiff’s execution being satified, could arise from the circumstance of a levy being endorsed on it, when it appeared, that upon that execution’s being enjoined by the Court of Equity, the same land had been levied on and sold by a younger execution. The levy was discharged by the granting of an injunction. It appeared, however, from the judge’s report, that the operation of the plaintiff’s execution was suspended by the injunction, probably until the levy and sale under the younger execution. If this' be so, and the transaction itself renders it likely, it makes the question, whether, under these circumstances, the plain *72 tiff’s execution was entitled to the money, or whether the sheriff was .not bound to pay it over to the younger execution. On this subject I entertain no doubt, whatever. There would be no doubt, under the English decisions, that the execution, under which property was levied on and sold, became entitled to the money, though there was an elder execution in the sheriff’s office, at the time; and if this happened, through the fault of the sheriff, the party’s redress was against him. In Smallcomb v. Cross, 1 Ld. Raymond, 251 (reported in various other authors,) two executions were delivered to the sheriff on the same day; the plaintiff to the elder, took out a warrant to levy; the sheriff executed the younger, and paid over the money to that plaintiff, and it was held that the owner of the elder execution had no recourse against him. The doctrine is laid down by Ld. Ellenborough in Payne v. Drew, 4 East, 521, that “ where there are several authorities competent to bind the goods of a party, whén executed by the proper officer, that they shall be as effectually and for all purposes bound by the authority which actually attaches upon them in point of execution.” From the case of Hutchison v. Johnston, 1 T. R 729, it appears that where there are two executions in the sheriff’s hands, the goods must not only be levied on, but sold under the younger before it will be entitled to the proceeds. See also Rybot v. Peckham, in a note to the last case, and Bradley v. Windham, 1 Wils. 44. In Lowthal v. Tomkins, 2 Eq. Ca. Ab. 380, Ld. Hardwicke explains what is meant by goods being bound from the delivery of the execution, “ that if defendant makes an assignment of his goods, unless in market overt, the sheriff may take them in execution.” Ld. Ellenborough, in Payne v. Drew, cites and adopts what is said by Holt and Dolben, Comb. 145, to the same effect, and in the same case he explains, that the sense in which goods are said to be bound, is, that it binds the party himself and all claiming under him, but does not defeat the sale under a subsequent execution. The same principles seem to be applied to a judgment which binds *73 lands from the date of its entry. By the Stat. 33 H. 8 Ch. 39., (Sec Bac. Abr. tit., execution K.) the King’s debt has preference of the subject’s, and binds the land from the time of the debt’s being contracted ; yet in the Attorney General v. Andrew, Hard. 23, it was held that where the land was actually extended by ele git the King’s extent on a bond debt of prior date to the subject’s judgment, came too late. So it is said, Com. Rep. 36, if a recognizance be extended, the executor ought to satisfy that in preference to a judgment which is not prosecuted. If such be the English rule, it is hardly necessary to say that if there be two executions in the sheriff’s hands, the elder of which is enjoined, he must go on to execute the younger, and pay over the money, and he could of course incur no liability for failing to enforce an execution which he was forbidden by a competent authority to ■enforce. We have departed from the English rule, however, first, in the case of Snipes v. the sheriff of Charleston, 1 Bay, 295 and in Greenwood v. Naylor, 1 M’Cord, 414, and many other cases. According to these decisions, if there be an older execution in sheriff’s office, though dormant, and he makes money by levy and sale under a younger, he is bound to pay over the money to the satisfaction of the elder; and if the money be made by the sale of land, the rule has been so extended that the money must be paid over to the oldest judgment though no execution has been lodged. I think these decisions very much to be regretted, as they have been the source of infinite frauds. But the doctrine established by them has been too long and too firmly settled, to be shaken now. If they .are to be departed from, that task must be left to the 'legislature. I do not, however, feel disposed to follow them an inch further than they necessarily lead. Bo they govern this case ? Those decisions go upon this, that there is an older judgment or execution entitled to the money, to which the sheriff may properly pay it, and to which he is bound to pay it. That cannot apply when the sheriff is forbidden to enforce the elder execution, and would be guilty of a contempt of *74 Court if he should pay over the money to it. By w’iat rule of law, or practice of Court, could the sheriff be authorized to retain in his hands sufficient moneY 1° satisfy the elder execution, to abide the event of the suit in Equity ?
the^^TreadiSsI
*74 The absurd consequences to which a contrary determination would lead, and which were pointed out in argument, illustrate the correctness of the view now taken. When an older execution is enjoined, either, it must pperate as an injunction to all younger ones, or, they must first raise money enough to satisfy the older, before any money can be applied to them. If an execution of five thousand dollars be enjoined, and a younger one of fifty dollars comes into the Sheriff’s hands, five thousand and fifty dollars worth of property mustbe sold before the younger execution can be satisfied ; and this, though it may happen that the elder will be perpetually enjoined. Before our act of 1784, a party applying for an injunction, was required to deposit the amount of the judgment.— Could the creditor then refuse to accept the deposit and take the debtor’s property to the prejudice of younger execution creditors? By that act, a bond with security is substituted in place of the deposit. This is an advantage which he gains to compensate him for being delayed by the injunction. If the debtor’s property should be insufficient to satisfy all creditors, would it be equitable that he should neglect that security, to take the whole property from the younger execution creditors ? The case of Porteus v. Snipes, 1 Bay, 219, has no bearing upon this. That case decides nothing as to the relative rights of younger and older execution creditors; but only that when an in-, junction is dissolved, the creditor has an election to proceed either on the bond, or on his execution.
Another question was made by the counsel, in argument, relative to the competency of this Court to take notice of a ground which was not taken befo're the Court below, nor made a ground of appeal, or at all events of the propriety of the Court’s doing so.— The English practice in relation to new trials, seems *75 lo be, that the judge who heard it, reports the whole case, and on the merits of the whole case, including law and evidence, the new trial is granted or refused, see Bright v. Eynon, 1 Burr. 390. Lord Mansfield in that case, says “ the reasons for granting a new trial, must be collected from the whole evidence, and from the nature of the case, under all its circumstances.” Our rule of Court indeed provides that the party shall not be heard in this Court on any ground which was not taken in the Court below, and made a ground of appeal. This applies to parties and their counsel; and with great reason; for otherwise, the opposite party might be surprized by a ground which he was not prepared to meet; perhaps a mere technical one, having no relation to the substantial merits of the case. But it has never been supposed to apply to the Court, when it perceives matter in the cause having an important bearing on its justice and merits. The Court will always take care, that there shall be full opportunity for explanation or argument. In Rose v. Daniel, 1 N. & M’C. 33, the circumstance on which a new trial was granted, was first discovered on the hearing in the Court of Appeals, though it was the neglect of the party not to have discovered it before. An infinite number of similar instances might be found. The counsel very much misconceives the authority and duty of the Court, if he supposes its sole function to be that of an umpire in a contest of dexterity between opposing counsel, and not to administer substantially the justice of the country. It can hardly be necessary to say that the Court does not assume original, instead of appellate, jurisdiction, when it affirms or reverses the judgment of the Court below, though on grounds, and for reasons, which did not ap--pear to that Court.
The case must go back for the purpose of enquir-ing whether the plaintiff’s execution was suspended by the injunction, at the time of the levy and sale-under the younger execution.

The motion for new trial is therefore granted*.